JOHN G. LEWIS, Assignee. v. WM. SLOAN and others.

The jurisdiction of a Bankrupt Court being conceded, its adjudication of bankruptcy is a judgment *in rem* fixing the *status* of the bankrupt, which upon that point is binding upon all the world, and can only be impeached for fraud in obtaining it.

Prior to the Bankrupt law, it was held in North Carolina that an insolvent had a right to prefer one or several among his creditors, although the effect was to hinder and delay others. This right of preference is taken away by that Act, and the State Courts are bound to hold that fraudulent and void, which, the Act declares to be so under the conditions which it prescribes. Every Court however, in which a controversy as to the title to the property alleged to have been fraudlently conveyed, may arise, has jurisdiction to inquire whether the conveyance was in fact and in law fraudulent, *i. e.* whether the conditions prescribed by the Act to make it fraudulent, existed.

A charge of the Judge in the Superior Court, which is in part erroneous, but which calls the attention of the jury, as fairly as could be expected under the circumstances to the material questions on which they were to pass, is no ground for a new trial.

CIVIL ACTION, tried before *Logan, J.,* at the Spring Term, 1872, of LINCOLN Superior Court.

The following is substantially the case agreed and transmitted to this Court as part of the transcript of the record.

The plaintiff, assignee in bankruptcy of Christy Rhyne, one of the defendants, seeks by this action to recover the possession of a tract of land in Gaston county, which the other defendant Sloan, had purchased of Rhyne, in November, 1867. On the trial below, judgment by default was taken against Christy Rhyne and Harry Rhyne, another defendant, who were in possession of the land, for want of an answer, and the trial was had as to defendant, Sloan.

In his complaint, the plaintiff charges that the sale to Sloan was fraudulent and void, as being in direct violation of the " Act to establish a uniform system of bankruptcy throughout the United States," and the question involved in this charge, is the principle one decided in this Court.

The defendant, in his answer, positively denies any fraud or fraudulent intent in the purchase of the land from Christy Rhyne, and ' alleges in detail the indebtedness of

Rhyne to him, and the consideration given in the purchase of the land in dispute.

There was much evidence introduced by both parties. On the part of the plaintiff to show the indebtedness of Rhyne about the time the deed was given, the involuntary bankruptcy of Rhyne, the appointment of plaintiff, as assignee, and the knowledge of the defendant Sloan, of the embarrassment and insolvent condition of Rhyne's estate. And for the defendant, in denial and explanation of the testimony offered by the plaintiff. So far as is material, the evidence is set out in the opinion of the Court.

The deed from Christy Rhyne to Sloan bears date 27th November, 1867. The creditors' petition declaring Rhyne a bankrupt was filed the 18th March, 1868, charging the sale of the land as the act of bankruptcy relied upon. The suit originally commenced in Gaston was removed on affidavit to Lincoln.

After the evidence closed on the trial in the Superior Court, the defendant, in writing, prayed the following instructions:

1. That plaintiff acquired no title under the assignment in bankruptcy, as the copy of the record from the District Court, on its face shows that the Court had no jurisdiction to declare Christy Rhyne a bankrupt.

2. That if said adjudication had been covinously and fraudulent obtained, it was void as to the defendant.

3. Before plaintiff can recover, he must satisfy the jury that when defendant, Sloan, received his deed from Rhyne, a fraud upon the bankrupt act was intended by Rhyne, and that Sloan had reasonable cause to believe that such fraud was intended, and also that said Rhyne was insolvent.

His Honor charged the jury:

"In this case it is the opinion of the Court, that the petition of Craig and Bell in the bankrupt court," (praying that Christy Rhyne be declared a bankrupt,) "was adjudicated

in that Court, and this Court cannot go behind the record.

"In this case the plaintiff alleges fraud in the transaction between the defendant, Sloan, and Christy Rhyne as to the transfer of the land by Rhyne to Sloan. Fraud is a question of law, and defined to be, 'when an act is done by concealment or otherwise, prejudicial to the rights or interests of a party and without his knowledge or consent.' Wherefore, gentlemen of the jury, you being the judges of the facts, if you find that fraud has been committed by the defendant, you will find for the plaintiff, but if you find that no fraud has been committed, you will find for the defendant.

According to the bankrupt law, one is considered a bankrupt, who is unable to pay his debts. You are to take into consideration the knowledge of the defendant, Sloan, as to the condition of Rhyne at the time the transfer was made. Whether he was insolvent or not? Did the defendant know that Rhyne was insolvent? Did he have reasonable cause to believe that Rhyne was insolvent at the time the transfer was made, or did he have reasonable cause to believe that the conveyance was in fraud of the bankrupt act, and intended to defraud other creditors? Intent means an actual design in the mind, and must be found as a question of fact. If you should find these facts to be true, you will find for the plaintiff; if not true, for the defendant.

Persons have the right to secure their debts, or to prefer creditors, providing they do so according to law, not fraudulently. Every one is bound to know the law. Ignorance is do excuse for an unlawful or fraudulent act."

The jury returned a verdict for the plaintiff. Motion for a new trial; motion refused. Judgment and appeal by defendant.

*Guion*, for appellant.
*Bynum* and *Schenck*, contra.

RODMAN, J.  The plaintiff claims the land in controversy as the assignee of Christy Rhyne, adjudicated a bankrupt on 28th August, 1868.

1. Defendant claims that plaintiff is not lawfully assignee, and contends that the adjudication is void, because it appears from the petition of record in the bankrupt court that the principal of the petitioning creditors' debt is less than $250, although if the interest up to the date of the petition be added, it will exceed that sum.  In England, as in the United States, the law requires that the petitioning creditors' debt shall be equal to at least a certain sum, and it appears from the authorities cited by the counsel for the defendant that the courts in England do permit adjudications of bankruptcy to be collaterally avoided by proof that the petitioning creditors' debt was less than the sum; and also, that in arriving at that sum the interest is not added to the principal, at least unless the note or other writing bears interest on its face.  Eden Bank. 42; *Cameron* v. *Smith*, 2 B. & A. 305.  This, it would seem, can only be done on the theory that the petitioning creditors' debt must be of the prescribed amount in order to give the Court jurisdiction; for it is well settled that when a Court has jurisdiction of the subject matter, its judgments will not be allowed to be collaterally impeached or questioned in any other Court.  How the English law may be, or on what principles their courts proceed in such cases, it is unnecessary for us to inquire. In the United States, Congress has a constitutional right to enact a uniform bankrupt law, and it has done so and given a jurisdiction to the District Courts of the United States under certain circumstances to adjudicate persons bankrupt.

The act does not in terms declare that those courts shall have jurisdiction only when the petitioning creditors' debt amounts to $250 of principal money.  These courts are competent to put the construction on the statute that the debt is sufficient if the principal and interest added together

amount to that sum. And it would seem like wantonly seeking a conflict, if the State Court by a different construction, should deny the jurisdiction of the United States Courts in such a case. We may admit that if a want of jurisdiction in any case plainly appeared on the record of a bankrupt court, the State Courts would be justified in holding the judgment void on that account. But that is not this case; and without undertaking ourselves to put any construction on the bankrupt act in question as to the petitioning creditors' debt, we accept that which the bankrupt court has acted on in declaring Rhyne a bankrupt. We were not referred to any decisions on this question made since our bankrupt act, and we know of none; but we have reached our conclusion on general principles only.

The jurisdiction of the bankrupt court being conceded, its adjudication of bankruptcy is a judgment *in rem*, fixing the *status* of the bankrupt, which, upon that point, is binding on the world, and can only be impeached for fraud in obtaining it. See *Duchess of Kingston's* case, 2 Smith's L. C. 438 to 447, where the effect of judgments is discussed at great length, and with eminent learning.

2. The defendant then claims the land under a conveyance from Rhyne and his wife to him, dated on 27th November, 1867, and professing to be made for a consideration of $3,500. The plaintiff contends that this deed was in fraud of the bankrupt act, (sec. 39,) and therefore void; that having been made either " with intent to delay, defraud or hinder his creditors," or by one who was a bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, with intent to give a preference to one or more of his creditors, and to defeat or delay the operation of that law; and a petition to adjudicate the said Rhyne a bankrupt having been brought within six months after such conveyance, it was void, and he, as assignee, could recover the property conveyed. Bankrupt Act, 2 March 1867—5—39.

36

By the law of North Carolina prior to the enactment of the bankrupt act, every conveyance made with intent to delay, defraud or hinder creditors, was void as to them. It was held however, that an insolvent had a right to prefer one or several among his creditors, although the effect was to hinder and delay others. The preference being allowed by law, and in favor of a just debt, did not in a legal sense defraud the other creditors. By the bankrupt act however, this right of preference among creditors was taken away from an insolvent, or from one in contemplation of bankruptcy or insolvency, and the preference itself made void; *provided* a petition should be filed within six months thereafter by a creditor, &c., to procure an adjudication of bankruptcy against the insolvent debtor. The State Courts are bound to hold that fraudulent and void, which the Act declares to be so under the conditions which it describes. But every Court in which a controversy as to the title to the property alleged to have been fraudulently conveyed, may arise, has jurisdiction to inquire whether the conveyance was in fact and in law fraudulent; that is, whether the conditions prescribed by the act to make it fraudulent, existed. If a petition was not filed within six months after the alleged fraudulent conveyance, it cannot be held void, as being an unlawful preference.

It would not be so held in the bankrupt courts, and of course not in the State Courts. And it is open in the State Courts, to inquire whether the grantor was bankrupt or insolvent; whether the conveyance was made in contemplation of bankruptcy or insolvency, and whether with the intent unlawfully to prefer one or several creditors.

Although the adjudication of bankruptcy is a judgment *in rem* and as such conclusive on all the world, and although in arriving at that judgment, the bankrupt court declares the conveyance alleged as the act of bankruptcy to be a preference among creditors, and therefore fraudulent within

the meaning of the act; yet such declaration is no part of the judgment, but is merely incidental to it, and so far from being conclusive on strangers that the conveyance was fraudulent, is not even evidence against them for that purpose. It is merely *"res inter alias acta quæ nemine nocere debet."* No one not a party to the record is affected by it, except so far as it is *in rem.* 2 Smith's L. C. *ub. sup. Barrs* v. *Jackson,* 1 You. & Coll. 585, S. C. 1 Phil. 582. Of the American cases see *King* v. *Chase,* 15 N. H. 9.

In addition to what is said in those cases, there is a reason why the effect of a judgment *in rem* should be more closely confined to the precise point adjudged, viz: That so far as it is *in rem.* and fixes the *status* of the person or property affected, it binds all the world : whereas, a judgment *in personam* binds only parties and privies who have once had an opportunity of contesting it.

There was evidence in this case tending to show that the conveyance in question was fradulent within the Act, and the jury found that it was. We are now prepared to consider the exceptions to the Judges charge.

There are several propositions of law in the instructions of his Honor which are obviously erroneous. For example, his definition of fraud : " Fraud is a question of law, and defined to be, where an act is done by concealment or otherwise, prejudicial to the rights or interest of a party, and without his knowledge or consent." And so, his definition of a bankrupt: "according to the bankrupt law, one is considered a bankrupt who is unable to pay his debts."

But upon a consideration of the instructions as a whole, we think they call the attention of the jury as fairly as could be expected under the circumstances, to the material questions on which they were to pass. He says to them, " You are to take into consideration the knowledge of the defendant Sloan as to the condition of Rhyne at the time when the transfer was made. Whether he was insol-

vent or not? Did the defendant know that Rhyne was insolvent? Did he have any reasonable cause to believe that Rhyne was insolvent at the time the transfer was made, or did he have reasonable cause to believe that the conveyance was in fraud of the bankrupt act, and intended to defraud other creditors? Intend, means an actual design in the mind, and must be found as a question of fact. If you should find these facts to be true, you will find for the plaintiff; if not true, for the defendant. Persons have the right to secure their debts, or prefer creditors, provided they do so according to law, not fraudulently. Every one is bound to know the law; ignorance is no excuse for an unlawful or fraudulent act."

If the defendant had desired more particular instructions upon any point omitted by his Honor, he might have asked for them.

PER CURIAM. Judgment affirmed.