W. A. DILLS v. E. R. HAMPTON.

*Trespass— Waste—Estoppel—Licenser—Judge's Charge.*

1. Where the defendant, as overseer of a road, entered on and took possession of a piece of land belonging to the plaintiff for the purposes of the road, under a license from the tenant of the plaintiff; *Held,* that he was liable in damages in an action by the owner of the fee.

2. In this State, any act which works a permanent or present injury to the free-hold, is waste.

3. A license from one who had no right to give it cannot justify an illegal act.

4. A grant from the State will be presumed from thirty years' possession, although no privity can be traced between the successive occupants.

5. A charge which is in part erroneous, but which calls the attention of the jury fairly to the material questions on which they are to pass, is no ground for a new trial.

6. One who enters as a licenser is estopped to deny the title of his licensee, and when the license is given by a tenant, the licenser is estopped to deny the title of his licensee's landlord.

(*Moore* v. *Hobbs*, 77 N. C., 65; *Knight* v. *Houghtalling*, 85 N. C., 17; *Williams* v. *Lanier*, Busb., 30; *Fitzrandolph* v. *Norman*, N. C. Term Rep. (127), 564; *Simpson* v. *Hyatt*, 1 Jones, 517; *Lewis* v. *Sloan*, 68 N. C., 557; *Whitaker* v. *Cawthorne*, 3 Dev., 389, cited and approved).

CIVIL ACTION, tried before *Gudger, Judge,* and a jury, at the Fall Term, 1883, of JACKSON Superior Court.

The action was brought to recover damages for an alleged trespass committed by the defendant upon a certain piece of land for which the plaintiff alleged he had title.

In his complaint the plaintiff alleged that the defendant entered upon the *locus in quo* with force and arms, and with divers persons, and tore down his fence and removed it back upon his land so as to throw out of his inclosure a strip of his cultivated land one hundred yards long and from eighteen to twenty-seven feet wide, thereby turning out and exposing to depredation a great part of his land which was very valuable, together with many large and valuable fruit trees, to-wit: ten apple trees.

The defendant denied the allegation of the plaintiff as set out in the complaint.

The following are the facts disclosed by the case on appeal:

The plaintiff offered a deed for the land in question to him from the executors of one Love. The deed was permitted to be read, under objection by the defendant, His Honor, at the time, stating that the deed would do the defendant no harm unless the plaintiff showed that the makers thereof had the right to make the deed.

The plaintiff obtained the possession of the land in August, 1882, and leased it to one Inman for three years, who assigned the lease to Bumgarner. The lease had not expired when the alleged trespass was committed. One Jones and his father had been in possession and cultivation of the land for forty years or more before the possession of the plaintiff. The fence inclosing the *locus in quo* was taken down by the defendant, and moved back upon the cultivated land for the distance of about one hundred yards in length and to the width of from eighteen to twenty-seven feet, and thereby several apple trees, which the plaintiff had reserved from the lease, were turned out and exposed to depredations.

A public highway ran between the fence, as it originally stood, and a creek. The road had become impassable, and the defendant, who was the overseer, moved the fence of the plaintiff back in order to open a road over the land in question.

The defendant had no authority for changing the road, and was forbidden by the plaintiff to make the change before it was done. Prior to moving the fence the defendant had obtained the consent of Bumgarner to do so.

The defendant requested the following instructions, to-wit:

(1) That the gist of this action is the breaking the close of another, and that in order to maintain the action, the plaintiff must, at the time of the trespass, have the actual possession of the land and not the right merely to enter.

(2) That the right to enter and gather apples merely was not such a possession as would support the action—the plaintiff must have the exclusive interest in the land at the time.

(3) That in order that the plaintiff may recover in this action, he must show title in himself and those under whom he claims, or the actual and rightful possession of the land—that in this case the plaintiff has failed to show such title as the law requires, and if he recover at all, he must recover upon his actual possession. That if from the evidence they should be satisfied he did not have actual possession, then he could not recover.

(4) That if the jury should believe that Bumgarner, the tenant in possession of the close, gave permission to the defendant to go upon the land and move the fence, then the plaintiff cannot recover.

(5) That the damage must be proximate and not remote, and that the loss of a crop of apples is too remote.

(6) That the damages must be for the act of entering and breaking the plaintiff's close, and cannot be for damages resulting after the trespass, such as injury to the subsequent year's crops, or the loss of the subsequent apple crops, being after the plaintiff had knowledge of the moving of this fence.

(7) That the moving the fence by the defendant did not disseize the plaintiff of his freehold, if he had such an interest, and that he or his tenants might have re-entered immediately after the trespass complained of, and fenced up the road so opened.

The Court declined to give the instructions and the defendant excepted.

The court charged the jury as follows, to-wit:

(1) That the deed from James R. Love's executors was not sufficient to show title in the plaintiff, and that they should not consider it as any evidence of title.

(2) That if the plaintiff and those under whom he claimed had been in the actual possession of the land upon which the road is alleged to have been made, for twenty years or more, excluding the time elapsing between the 20th day of May, 1861, and the 1st day of January, 1870, then the law presumed the title to be in the plaintiff.

(3) That if the defendant had been notified by plaintiff not to enter and tear down the fence, and afterwards procured a license from Bumgarner to enter, the defendant could not deny plaintiff's title, for that the title and possession of the tenant is the title and possession of the landlord.

(4) The defendant could not justify his act in entering on the lands mentioned in the pleadings, if he did enter, because he was an overseer of the road.

The defendant excepted to the second, third and fourth instruction as given by the Court:

There was a verdict for plaintiff; judgment accordingly; and defendant appealed.

No counsel for the plaintiff.

*Messrs. T. F. Davidson* and *Armistead Jones*, for defendant.

ASHE, J. (after stating the facts as above). The instructions asked by the defendant are predicated upon the idea that this is an action in the nature of *trespass quare clausum fregit.* If so, there would be error in the refusal of His Honor to give the instructions prayed for by the defendant. But the defendant has misconceived the plaintiff's cause of action. Upon the facts stated, the nature of the action is *trespass on the case,* and the instructions asked are not applicable to such an action, and we, therefore, hold there was no error in the refusal of His Honor to give them. When the facts of a case are stated in a " plain and concise statement of the cause of action," the plaintiff is entitled to any relief justified by the facts proved, and not inconsistent with the pleadings. *Moore* v. *Hobbs,* 77 N. C., 65; *Knight* v. *Houghtalling,* 85 N. C., 17.

The *gravamen* of the plaintiff's action is a permanent injury to the freehold. When there is such an injury done to land, and at the time there is a lease upon it, the lessee may sustain an action of trespass *quare clausum fregit,* and at the same time the reversioner may have an action against the trespasser for the injury to his reversionary interest in the freehold.

Here the plaintiff claimed title to the land, he had leased it to Inman for three years, who had assigned the lease to Bumgarner, and the lease had not expired when the trespass complained of was committed. Bumgarner might have sustained an action for the trespass, if he had not given his consent to it; and the plaintiff clearly had a right of action for the trespass, if he had the title and the trespass worked a permanent injury to the freehold affecting his reversion. *Williams* v. *Lanier,* Busb., 30.

These are principles too well settled to require the citation of authorities to support them.

If Bumgarner had committed the acts complained of by the plaintiff, he would have been liable to the plaintiff in an action of *trespass on the case* in nature of waste under the former system of pleading.

Waste as defined by *Blackstone*, Book 2, page 281, "is a spoil or destruction in houses, garden-trees, or other corporeal hereditaments to the disherison of him that hath the remainder or reversion in fee simple, or fee tail." The conversion of land from one species to another is waste in England; as to turn arable land into pasture or meadow, or meadow into arable, or arable into woodland, are all of them waste. *Ibid.*, 282. In this State the question of waste depends upon the fact whether the injury to the land works a permanent or present injury to the freehold. Surely then, the turning out arable land, not into woodland, but to the uses of a highway to be trampled upon and cut up by the feet of horses and the wheels of vehicles would be waste much more serious and injurious to the freehold than turning it into woodland or to a different species of husbandry. If Bumgarner would be liable to an action for such an injury as that complained of, he certainly had no right to give permission to another to do the act, and one who commits an illegal act can never justify under a license from one who had no right to give it. The permission then, given by Bumgarner to the defendant could not avail him as a defence to the action.

But the defendant contends that the plaintiff had no title to the land, and insisted there was error in the instructions given by His Honor to the jury in the second, third and fourth instructions.

As to the second instruction, it is held that thirty years possession of land will presume a grant from the State, although no privity can be traced between the successive occupants. *Fitzrandolph* v. *Norman*, N. C. Term Rep., (127) 564; *Simpson* v. *Hyatt*, 1 Jones 517. But even if there was error in the instruction, it could not have misled the jury, for the third instruction

was clearly right, and laid down the principle which governs the case, to-wit, that the defendant, having procured a license from the lessee, Bumgarner, to enter the land, he could not deny the title of the plaintiff, for the title and possession of the tenant is the title and possession of the landlord.

Even if the instruction was erroneous in its application to the facts of the case, it is not ground for a new trial, when the court calls the attention of the jury to the *material question* on which they are to pass. *Lewis* v. *Sloan*, 68 N. C. 557.

There is no principle better settled than that a tenant cannot dispute the title of his landlord, and it is also well settled that the doctrine of estoppel, as applicable to tenants, prevails against one who enters or takes possession under a mere license. *Bigelow on Estoppel*, page 425. In *Johnson* v. *Baytup*, 3 A. & E., 188, it was held that where a "lessor of a plaintiff being, in possession of a house and premises, defendant asked leave to get vegetables in the garden, and having obtained the key for that purpose, fraudulently took possession of the house and set up claim of title; *Held*, that having entered by leave of the party in possession, she could not defend an ejectment, but was bound to deliver up the premises before she proceeded to contest the title—a mere licenser being in this respect on the same footing as a tenant." The same doctrine is maintained in this State in *Whitaker* v. *Cawthorne*, 3 Dev., 389, and to the same effect are *Glynn* v. *Grays*, 20 N. H., 114; *Wilson* v. *Motly*, 59 N. Y., 120; *The Hamilton and Rossville Hydraulic Co.* v. *The Cincinnati, Hamilton and Drayton R. R. Co.*, 29 Ohio State, 341.

The defendant is estopped as licenser of Bumgarner to deny his title, and Bumgarner as tenant of the plaintiff, is estopped to deny his title, *ergo*, the defendant is estopped to deny the title of the plaintiff. So there was no error in the third instruction.

The fourth instruction was so manifestly correct that it is useless to discusss it or take further notice of it.

There is no error. The judgment of the Superior Court is affirmed.

No error. Affirmed.